IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

SHERMAN ANTWAN BROADHEAD, :
AIS #246842 :
　　　　　　　　　　　　　　　　　:
　　　Plaintiff, :
　　　　　　　　　　　　　　　　　:
vs. 　　　　　　　　　　　　　　: 　CIVIL ACTION 16-0108-KD-M
　　　　　　　　　　　　　　　　　:
OFFICER LARRY WOODS, :
　　　　　　　　　　　　　　　　　:
　　　Defendant. :

## REPORT AND RECOMMENDATION

This action under 42 U.S.C. § 1983 brought by an Alabama prison inmate, Sherman Broadhead, proceeding *pro se* and *in forma pauperis,* was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. GenLR 72, and is now before the Court on Plaintiff's Complaint (Doc. 1), Defendant, Larry Wood's, Answer, Special Report, (Docs. 13, 16), and Plaintiff's Response (Doc. 24). The Court has converted Defendant's Special Report into a Motion for Summary Judgment (Doc. 17), and, after consideration of such, and for the reasons set out below, it is recommended that Defendant's Motion for Summary Judgment be granted and Plaintiff's action be dismissed with prejudice.

1

FACTS AND PROCEEDINGS

Plaintiff, Sherman Broadhead, is an Alabama Department of Corrections ("ADOC") inmate, serving a twenty year sentence for First Degree Rape at Holman Correctional Facility. (Doc. 1 at 5). Larry Woods is a Corporal employed by the Baldwin County Corrections Center. (Doc. 13-2 at 2).

This action arises out of an incident on August 29, 2015, wherein Plaintiff was sprayed with OC Spray[1] and hit with two shots from a pepper ball gun by Defendant. (Doc. 1). According to Plaintiff, on the day of the incident, he was confined in a "suicide cell" in the Baldwin County Jail when he was told to "get down on the floor and put my hand[s] behind my back." (Doc. 1 at 3; Doc. 1-1). Plaintiff asserts he "did everything he was told", but that he was still sprayed in the face with mace. (*Id.*) After being sprayed, Plaintiff jumped up and started swinging at the officers in "self defense". (Doc. 24 at 8-9). He was then shot twice with a pepper ball gun by Defendant Woods, taken to the floor by other officers, and ultimately placed in a restraint chair. (*Id.* at 9-11).

As a result of the above-described incident, Plaintiff filed a Complaint against Defendant for criminal

---

[1] The record contains a factual discrepancy as to whether Plaintiff was sprayed pepper spray, OC spray, or mace. However, the exact type of spray used is immaterial to this Court's analysis.

negligence, excessive force, and assault. (*Id.* at 4). For relief, Plaintiff requests "$350,000 for my damages and what was did to me and to make sure this officer can't do this again to me or others again." (*Id.* at 6).

Defendant Wood filed his Answer and Special Report, denying Plaintiff's allegations and pleading multiple defenses. (Docs. 13, 16). The relevant documents filed with the Special Report were: Plaintiff's booking report (Doc. 13-1); the affidavit of Larry Woods (Doc. 13-2); the jail incident report (Doc. 13-3); the video of the incident (filed conventionally as Doc. 14); the statements of Officer Steven Drinkard and Staff Sergeant Klos (Docs. 13-5 and 13-6, respectively); the Use of Force report (Doc. 13-7); the Confinement Watch log (Doc. 13-8); all incident reports involving Plaintiff (Docs. 13-10 and 13-11); all disciplinary reports involving Plaintiff (Doc. 13-12); and all grievances completed by Plaintiff (Doc. 13-3).

According to Defendant's Special Report, Plaintiff was booked into the Baldwin County Detention Center on July 9, 2015. (Doc. 13 at 2; Doc. 13-1). On August 29, 2015, the date of the subject incident, Defendant Woods was working in the "G" pod unit, when he was asked to assist with a situation involving Plaintiff. (Doc. 13 at 2; Doc. 13-2 at ¶¶ 5-6; Doc. 13-3). Defendant Woods was relieved from G-

Pod to assist with Plaintiff whom he understood was continuously kicking his cell door and acting in an aggressive manner towards staff members. (Doc. 13 at 2-3; Doc. 13-2 at ¶ 7; Doc. 13-3). When Defendant arrived to Plaintiff's cell unit, Plaintiff was kicking his cell unit door and was not complying with the officers who were already present (Staff Sergeant Klos, Private First Class Drinkard, and Private First Class Green,) all of whom were at Plaintiff's cell with the intention of putting Plaintiff in a restraint chair. (Doc. 13 at 3; Doc. 13-2 at ¶¶ 8-9; Doc. 13-3; Doc. 13-5; Doc. 13-6.)

Upon arrival to Plaintiff's cell, Defendant ordered Plaintiff to lie down and place his hands behind his back, but Plaintiff did not comply. (Doc. 13 at 3; Doc. 13-2 at ¶¶ 10 and 11; Doc. 13-3; Doc. 14; Doc. 13-5; Doc. 13-6). According to Defendant, Plaintiff was additionally in a push-up position that could have allowed him to quickly jump up and potentially fight any of the officers that were present. (Doc. 13-2 at ¶ 12.). Due to Plaintiff's failure to lie flat on the ground and place his hands behind his back, Defendant sprayed Plaintiff with a one second burst of pepper spray. (Doc. 13-2 at ¶ 13; Doc. 13-3; Doc. 14; Doc. 13-5; Doc. 13-6; Doc. 13-7). Once pepper sprayed, Plaintiff immediately jumped up and started swinging his

4

fists at Defendant. (Doc. 13-2 at ¶ 14; Doc. 13-3; Doc. 14; Doc. 13-5; Doc. 13-6). Defendant was scratched by Plaintiff after which Defendant shot Plaintiff with two pepper balls from his pepper ball gun. (Doc. 13-2 at ¶¶ 15-17; Doc. 13-3; Doc. 13-5; Doc. 14; Doc. 13-6).

After being shot, Plaintiff complied with the officers' commands by lying flat on the floor and placing his hands behind his back to be handcuffed. (Doc. 13-2 at ¶ 18; Doc. 13-3; Doc. 14; Doc. 13-5; Doc. 13-6). Plaintiff was then placed in a restraining chair and taken by the correctional officers to be decontaminated. (Doc. 13-2 at ¶ 19; Doc. 13-3; Doc. 14; Docs. 13-5, 13-6, and 13-7). Video of the incident does not show the entirety of the scene leading up to Defendant arriving to Plaintiff's cell, but does show Plaintiff lying on the floor before being sprayed with pepper spray by Defendant. (Doc. 14). Video also shows Plaintiff jumping up and swinging at Defendant before being shot with pepper balls and ultimately being placed in a restraint chair by several officers. (*Id.*)

Prior to the subject incident, Plaintiff had informed some of the correctional officers that he was going to send one of them to the hospital. (Doc. 13-2 at ¶ 25). Additionally, in the weeks leading up to the subject incident, Plaintiff verbally threatened Defendant on

5

numerous occasions and had at least fifteen incident reports written on his behalf due to his attitude and behavior, one of which resulted in Plaintiff being informed that any further confrontations would result in him being sprayed with OC spray. (Doc. 13-2 at ¶ 26; Doc. 13-11; Doc. 13-6 at 3; Doc. 13-12). Plaintiff did not file any inmate request slips or grievance forms regarding the August 29, 2015 incident. (Doc. 13-2 at ¶ 27; Doc. 13-13).

## SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure grant this Court authority under Rule 56 to render "judgment as a matter of law" to the party who moves for summary judgment. FED.R.CIV.P. 56(a). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court must view the evidence produced by "the nonmoving party, and all factual inferences arising from it, in the light most favorable to" that party. *Barfield v. Brierton*, 883 F.2d 923, 934 (11th Cir. 1989). However, Rule 56(e) states that:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of

> fact as required by Rule 56(c), the court may:
> (1) give an opportunity to properly support or address the fact;
> (2) consider the fact undisputed for purposes of the motion;
> (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or
> (4) issue any other appropriate order.

FED.R.CIV.P. 56(e). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. . . . If the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (internal citations omitted). "Summary judgment is mandated where a party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Custom Mfg. and Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 647 (11th Cir. 2007).

Also, it is well settled that a conclusion cannot be taken as true, and the Court will not accept conclusory allegations as facts in consideration of a motion for summary judgment. *Ashcroft v. Iqbal,* 556 U.S. 662, 678-79 (2009); *see also Leigh v. Warner Bros., Inc.,* 212 F.3d 1210, 1217 (11th Cir. 2000)("[t]his court has consistently

7

held that conclusory allegations without specific supporting facts have no probative value"); *Fullman v. Graddick,* 739 F.2d 553, 556-57 (11th Cir. 1984)(a plaintiff's mere verification of conclusory allegations is not sufficient to oppose a motion for summary judgment).

DISCUSSION

A. Excessive Force

Plaintiff's Complaint asserts claims for excessive force in violation of 42 U.S.C. § 1983, criminal negligence, and assault. (Doc. 1 at 4). According to Plaintiff, the excessive force claim is supported by the fact that Plaintiff did as he was told prior to being pepper sprayed by Defendant, and, yet, was still sprayed maliciously and without cause. (Doc. 1, 1-1; Doc. 24, generally).

Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, … subjects, or causes to be subjected, any citizen of the United States … to the deprivation of any rights … secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983 (1994).

The Eighth Amendment's proscription against cruel and unusual punishment governs the amount of force that prison

officials are entitled to use against inmates. *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999). An excessive force claim has two requisite parts: an objective and a subjective component. *Sims v. Mashburn*, 25 F.3d 980, 983 (11th Cir. 1994). In order to satisfy the objective component, the inmate must show that the prison official's conduct was "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (*quoting Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). The subjective component requires a showing that the force used was "maliciously and sadistically for the very purpose of causing harm" rather than "a good faith effort to maintain or restore discipline." *Whitley v. Albers*, 475 U.S. 312, 320—21 (1986). In order to determine whether the force was used for the malicious and sadistic purpose of causing harm or whether the force was applied in good faith, courts consider the following factors: the need for the exercise of force, the relationship between the need for force and the force applied, the extent of injury that the inmate suffered, the extent of the threat to the safety of staff and other inmates, and any efforts taken to temper the severity of a forceful response. *Skelly v. Okaloosa Cty. Bd. of Cty. Comm'rs*, 456 Fed.Appx. 845, 848 (11th Cir.

9

2012) (quoting Fennell v. Gilstrap, 559 F.3d 1212, 1217 (11th Cir. 2009)).

In the present action, there is no dispute that on the day of the subject altercation, prior to Plaintiff being sprayed with pepper spray, he was kicking his cell door. (Doc. 24 at 3, 21). The only factual dispute is whether Plaintiff's behavior and refusal to follow the commands of officers caused him to be pepper sprayed or, as Plaintiff contends, he was sprayed despite doing everything he was told. Assuming, as Plaintiff asserts, that Plaintiff was sprayed while lying on the floor and following the commands of officers, there was still no violation of the Eighth Amendment.

Regardless of whether Plaintiff was complying with the oficers' commands at the precise moment that he was pepper sprayed, the subject incident was not an isolated event. Instead, the number of incidents involving Plaintiff leading up to the incident which is the subject of Plaintiff's Complaint must be considered. In that regard and in addition to the fact that Plaintiff was admittedly kicking his cell door, the record reflects that prior to the subject altercation, Plaintiff was involved in approximately fifteen disciplinary incidents for his behavior. (Doc. 13-11 at 1-32, generally; Doc. 13-12).

The record additionally shows that at least four of these previous incidents included verbal threats of physical violence to officers and involved Plaintiff kicking his cell door and refusing to follow the commands of officers. (*Id.*) The record further shows that Plaintiff had previously made verbal and written threats towards officers, including Defendant. (*Id.*) Lastly, Plaintiff had been forewarned that, due to his behavior, any future altercations would result in him being pepper sprayed. (Doc. 13-6 at 3; Doc. 13-11 at 27).

Under these circumstances, Defendant Woods could have reasonably perceived Plaintiff's conduct to be a threat to prison order and discipline and could have reasonably believed it necessary to use some measure of force to take physical control of Plaintiff and remove him from his cell; a belief which was proven correct by Plaintiff's resulting attack upon Defendant. Moreover, there is no evidence that the force applied, a one second burst of pepper spray, was used "maliciously and sadistically" to cause harm rather than in a "good faith effort to maintain or restore discipline", given Plaintiff's propensity to become hostile and to refuse to follow the commands of officers, including Defendant. *Whitley*, 475 U.S. 312, 320—21.[2] Further, there

---

[2] *See also Williams v. Benjamin*, 77 F.3d 756, 762-63 (4th Cir. 1996) (finding that the spraying of mace in the face and chest of a

is a lack of evidence that Plaintiff's injury, described by Plaintiff as a hurting and bleeding left side (Doc. 24 at 11), was anything other than minimal and it is undisputed that Plaintiff was provided with medical treatment, including a decontamination, immediately after the subject altercation took place. Thus, Plaintiff has failed to establish a violation of his Eighth Amendment right as a result of being pepper sprayed.

To the extent that Plaintiff's Eighth Amendment claim is based on him being shot with two pepper balls by Defendant, Plaintiff's claim is equally unavailing as it is clear that Plaintiff was shot after attacking Defendant and in an effort to de-escalate the subject altercation. As a

---

recalcitrant prisoner while in his cell did not constitute cruel and unusual punishment because he had been throwing water and refused to remove his arm from a food service slot); *Soto v. Dickey*, 744 F.2d 1260, 1270-71 (7th Cir. 1984) (upholding the use of mace in a prisoner's cell because he refused to be handcuffed), cert. denied, 470 U.S. 1085, 105 S. Ct. 1846, 85 L. Ed. 2d 144 (1985); *Clemmons v. Greggs*, 509 F.2d 1338, 1340 (5th Cir. 1975) (ruling that there was no constitutional violation when mace was used during a disturbance because there was no intent to punish), cert. denied, 423 U.S. 946, 96 S. Ct. 360, 46 L. Ed. 2d 280 (1975); *Geas v. DuBois*, 868 F. Supp. 19, 24 (D. Mass. 1994) (ruling that "'the use of non-dangerous quantities of [a chemical agent] in order to prevent a perceived future danger does not' generally overstep constitutional parameters."); *Blair-El v. Tinsman*, 666 F. Supp. 1218, 1222 (S.D. Ill. 1987) (finding that officers acted reasonably when they sprayed a chemical spray into an inmate's cell to quell a disturbance); *cf. Ort v. White*, 813 F.2d 318, 324 (11th Cir. 1987) (relying on the decision in *Soto v. Dickey* in which chemical agents were used, to determine that the denial of water was an immediate, coercive measure, and not punishment). It is only a "violation of the Eighth Amendment [Fourteenth Amendment] for prison officials to use mace or other chemical agents in quantities greater than necessary or for the sole purpose of punishment or the infliction of pain." *Soto*, 744 F.2d at 1270. "A limited application of mace may be 'much more humane and effective than a flesh to flesh confrontation with an inmate.'" *Williams v. Benjamin*, 77 F.3d 756, 763 (quoting Soto, 744 F.2d at 1262).

result, there is no evidence that Defendant's action of shooting Plaintiff with pepper balls was for a malicious or sadistic purpose, that the use of force was not proportional to the need to restore order, or that Plaintiff's injury[3] was more than minimal. Therefore, Plaintiff has not stated a claim for excessive force under the Eighth Amendment and summary judgment is due to be granted as a matter of law.[4]

B.  Prison Litigation Reform Act (PLRA)

Even assuming that Plaintiff could establish a violation of constitutional right, his claim is still due to be dismissed for failure to exhaust his administrative remedies.

The PLRA's exhaustion requirement, provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).

---

[3] Plaintiff does not distinguish whether his injury of a "hurting and bleeding" left side was a result of being pepper sprayed, being hit with pepper balls, or some other cause.  However, there is no indication that Plaintiff suffered any injury beyond those relating to his left side.

[4] Because this Court has determined that Plaintiff failed to establish a violation of a constitutional right, it is unnecessary to address whether the Defendant has qualified immunity. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001)("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.")

"Therefore, when a state provides a grievance procedure for its prisoners, ... an inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit." *Porter v. Sightler*, 457 Fed.Appx. 880, 881-82 (11th Cir.2012) (quoting *Bryant v. Rich*, 530 F.3d 1368, 1372 (11th Cir.2008) (quotation marks omitted). The PLRA's exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532, 122 S.Ct. 983, 992, 152 L.Ed.2d 12 (2002).

In the present action, it is evident that Baldwin County Jail has a grievance procedure and that Plaintiff is familiar with the grievance process. (Doc. 1 at 3; Doc. 13-13). There is also no dispute that Plaintiff failed to file a grievance relating to the incident which is the subject of this litigation. (Doc. 1 at 3; Doc. 24 at 13). Rather, Plaintiff only contends that he did not file a grievance because he was not given paper and then because he was moved to another jail a few days after the subject incident. (*Id.*) This Court understands Plaintiff's contentions to assert that the grievance process was unavailable to him. "To demonstrate that administrative

remedies were unavailable, Plaintiff must provide specific facts which indicate that jail staff inhibited him from utilizing the grievance process." *Milner v. Jennings*, 2008 WL 5381826 at *6 (December 23, 2008) (citing to *Boyd v. Corr. Corp. Of Am.*, 380 F.3d 989, 998 (6th Cir.2004) ("nonspecific allegations of fear" and "subjective feeling[s] of futility" no excuse for failure to exhaust administrative remedies).

In the instant action, Plaintiff does not provide any details as to the circumstances surrounding his inability to complete a grievance for lack of paper, i.e., whether and when he asked for paper, who he asked, what response he was given, an explanation for a refusal, etc., and his allegation without any supporting evidence is insufficient. It is also apparent that Plaintiff was not moved to a different facility, according to Plaintiff, "for a few days", so there is no indication that Plaintiff did not have time to complete a grievance. (Doc. 1 at 3.) As such, Plaintiff has not shown that he exhausted his administrative remedies or that the administrative remedies were unavailable to him following the incident that is the subject of this action. As a result, Plaintiff's claims are due to be dismissed for failure to exhaust administrative remedies.

C. Criminal Negligence and Assault Claims

In addition to Plaintiff's excessive force claim, Plaintiff has also asserted a claim for criminal negligence and assault. However, both of these claims are additionally due to be dismissed.

Negligence is not a cognizable claim under § 1983. *See Wilson v. Seiter*, 501 U.S. 294, 305, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). Further, to the extent Plaintiff is seeking to initiate a criminal prosecution against Defendant, no such remedy is available to Plaintiff. *See Maine v. Taylor*, 477 U.S. 131, 137, 106 S.Ct. 2440, 91 L.Ed.2d 110 (1986); *see also Otero v. United States Attorney General*, 832 F.2d 141, 141 (11th Cir.1987) ("[A] private citizen has no judicially cognizable interest in the prosecution or non-prosecution of another."). As a result, Plaintiff's claim for criminal negligence is due to be dismissed.

Further, Plaintiff's claim for assault is a state law cause of action and it is within the discretion of this Court to exercise pendant jurisdiction over such a claim. *See Rainey v. Allstate*, 370 F.3d 1086, 1088-89 (11th Cir.2004) (*citing to Mergens v. Dreyfoos*, 166 F.3d 1114, 1119 (11th Cir.1999). However, the Eleventh Circuit has "encouraged district courts to dismiss any remaining state

16

claims when, as here, the federal claims have been dismissed prior to trial." *Rainey*, 370 F.3d at 1089. In the present action, because Plaintiff's federal law claim is due to be dismissed for the reasons stated hereinabove, Plaintiff's state law claim of assault is, likewise, due to be dismissed.

## Conclusion

In conclusion, and for the reasons set out above, there is no question of material fact from which a jury could reasonably find that Plaintiff was subjected to the use of excessive force or that Defendant's conduct caused the deprivation of Plaintiff's constitutional rights. Further, there is no cognizable claim for negligence under § 1983 and, lastly, this Court is not inclined to exercise pendant jurisdiction over Plaintiff's state law claim for assault. As a result, it is recommended that Defendant's Motion for Summary Judgment be granted and this action be dismissed with prejudice.

## **NOTICE OF RIGHT TO FILE OBJECTIONS**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the

Clerk of this Court. See 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b); S.D. Ala. GenLR 72(c)(2). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

DONE this 9th day of September, 2016.

s/ BERT W. MILLING, JR  
UNITED STATES MAGISTRATE JUDGE